Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN ANDERSON,<br><br>    Plaintiff,<br><br>v.<br><br>JMP GROUP LLC, JOSEPH A. JOLSON, CRAIG R. JOHNSON, MARK L. LEHMANN, KENNETH M. KARMIN, H. MARK LUNENBURG, CARTER D. MACK, JONATHAN M. ORSZAG, STACI SLAUGHTER, and GLENN H. TONGUE,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Kevin Anderson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against JMP Group LLC ("JMP" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and

1

78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of JMP by Citizens Financial Group, Inc. ("Citizens").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of JMP common stock.

7. Defendant JMP, together with its subsidiaries, provides investment banking, sales and trading, equity research, and asset management products and services in the United

States. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "JMP."

8. Defendant Joseph A. Jolson ("Jolson") is Chief Executive Officer and Chairman of the Board of the Company.

9. Defendant Craig R. Johnson ("Johnson") is Vice Chairman of the Board of the Company.

10. Defendant Mark L. Lehmann ("Lehmann") is President and a director of the Company.

11. Defendant Kenneth M. Karmin ("Karmin") is a director of the Company.

12. Defendant H. Mark Lunenburg ("Lunenburg") is a director of the Company.

13. Defendant Carter D. Mack ("Mack") is a director of the Company.

14. Defendant Jonathan M. Orszag ("Orszag") is a director of the Company.

15. Defendant Staci Slaughter ("Slaughter") is a director of the Company.

16. Defendant Glenn H. Tongue ("Tongue") is a director of the Company.

17. Defendants Jolson, Johnson, Lehmann, Karmin, Lunenburg, Mack, Orszag, Slaughter, and Tongue are collectively referred to herein as the "Individual Defendants."

18. Defendants JMP and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On September 8, 2021, JMP and Citizens announced that they had entered into a definitive merger agreement under which Citizens would acquire JMP in an all-cash transaction. Under the terms of the merger agreement, JMP shareholders will receive $7.50 for each common

share of JMP they own. The press release announcing the Proposed Transaction states, in pertinent part:

### Citizens Financial Group, Inc. to Acquire JMP Group LLC

*Expands capital markets capabilities for commercial clients*

*Deepens expertise in healthcare, technology, financial services and real estate sectors*

September 08, 2021 06:30 AM Eastern Daylight Time

PROVIDENCE, R.I. & SAN FRANCISCO--(BUSINESS WIRE)--Citizens Financial Group, Inc. (NYSE: CFG or "Citizens") and JMP Group LLC (NYSE: JMP or "JMP") announced today that they have entered into a definitive merger agreement under which Citizens will acquire JMP in an all-cash transaction.

JMP is a highly regarded capital markets firm that provides investment banking services, including strategic advisory, equity research and sales and trading focused primarily on the healthcare, technology, financial services and real estate sectors. Upon the closing of the transaction, JMP, which was founded in 1999 and is headquartered in San Francisco, will operate as a wholly-owned subsidiary of Citizens.

\*      \*      \*

Under the terms of the merger agreement, JMP shareholders will receive $7.50 for each common share of JMP they own, or approximately $149 million in cash.

The merger agreement has been unanimously approved by the boards of directors of each company, and the transaction is targeted to close in the fourth quarter of 2021, subject to approval by the shareholders of JMP, receipt of required regulatory approvals, and satisfaction of other customary closing conditions. As of September 1, 2021, executive management and members of JMP's board of directors owned approximately 60% of its outstanding common shares.

Sullivan & Cromwell, LLP served as legal advisor to Citizens in connection with the transaction. Keefe, Bruyette & Woods, *A Stifel Company*, and JMP Securities LLC served as financial advisors to JMP, and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. served as legal advisor.

\*      \*      \*

**About Citizens Financial Group, Inc**.

> Citizens Financial Group, Inc. is one of the nation's oldest and largest financial institutions, with $185.1 billion in assets as of June 30, 2021. Headquartered in Providence, Rhode Island, Citizens offers a broad range of retail and commercial banking products and services to individuals, small businesses, middle-market companies, large corporations and institutions. Citizens helps its customers reach their potential by listening to them and by understanding their needs in order to offer tailored advice, ideas and solutions. In Consumer Banking, Citizens provides an integrated experience that includes mobile and online banking, a 24/7 customer contact center and the convenience of approximately 3,000 ATMs and approximately 1,000 branches in 11 states in the New England, Mid-Atlantic and Midwest regions. Consumer Banking products and services include a full range of banking, lending, savings, wealth management and small business offerings. In Commercial Banking, Citizens offers a broad complement of financial products and solutions, including lending and leasing, deposit and treasury management services, foreign exchange, interest rate and commodity risk management solutions, as well as loan syndication, corporate finance, merger and acquisition, and debt and equity capital markets capabilities. More information is available at www.citizensbank.com or visit us on Twitter, LinkedIn or Facebook.
>
> **About JMP Group LLC**
>
> JMP Group LLC is a diversified capital markets firm that provides investment banking, equity research, and sales and trading services to corporate and institutional clients as well as alternative asset management products and services to institutional and high-net-worth investors. JMP conducts its investment banking and research, sales and trading activities through JMP Securities and its venture capital and private capital activities through Harvest Capital Strategies and JMP Asset Management. For more information, visit www.jmpg.com.

20.     On October 15, 2021, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B.  The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21.     The Proxy Statement, which recommends that JMP shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) JMP's financial projections; (ii) the financial analyses performed by JMP's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in connection with its fairness opinion; (iii) potential conflicts of interest involving KBW; and (iv) the sales process leading up to the Proposed Transaction.

5

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) JMP's Reasons for the Merger; (iii) Recommendation of the JMP Board of Directors; (iv) Opinion of the Special Transaction Committee's Financial Advisor; and (v) Certain JMP Unaudited Prospective Financial Information.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the November 12, 2021 shareholder vote on the Proposed Transaction, JMP shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

    **1. Material Omissions Concerning JMP's Financial Projections**

24. The Proxy Statement omits material information concerning JMP's financial projections.

25. With respect to JMP's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Total Net Revenues, and (ii) Operating Net Income; (2) JMP's financial projections for the years 2022 through 2026 as relied upon and utilized by KBW in connection with its fairness opinion; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the

6

Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

27.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

28.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning KBW's Analyses

29.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by KBW.

30.     With respect to KBW's "*Selected Companies Analysis*" and "*Selected Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction KBW observed in its analysis.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 25, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

31.     The Proxy Statement fails to disclose the following concerning KBW's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 11.0% to 15.0%, and (ii) multiples ranging from 6.9x to 9.3x; (2) the estimated excess cash flows that JMP could generate over the 5.5-year period from June 30, 2021 to December 31, 2026 as a standalone company, and all underlying line items; (3) the terminal values of JMP; and (4) JMP's estimated fiscal year ending December 31, 2026 operating net income.

32.     The valuation methods, underlying assumptions, and key inputs used by KBW in rendering its purported fairness opinion must be fairly disclosed to JMP shareholders. The description of KBW's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, JMP shareholders are unable to fully understand KBW's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving KBW**

33.     The Proxy Statement omits material information concerning potential conflicts of interest involving KBW.

34.     The Proxy Statement provides that, "during the two years preceding the date of its opinion, KBW provided investment banking and financial advisory services to Harvest Capital Credit Corporation ("HCC"), which was a publicly-traded business development company that, among other things, received investment advisory services from an affiliate of JMP, and KBW received compensation for its services." The Proxy Statement further provides that "KBW acted

as financial advisor to HCC in connection with its acquisition by Portman Ridge Finance Corporation which closed in June 2021."

35. The Proxy Statement, however, fails to disclose the amount of compensation that KBW received or expects to receive for providing the aforementioned services.

36. The Proxy Statement provides that "[a]n investment banking affiliate of KBW currently maintains a business relationship with an affiliate of Citizens to jointly market certain services to real estate investment trusts and pays such Citizens affiliate a portion of the compensation received by such KBW affiliate for its services to such real estate investment trusts."

37. The Proxy Statement, however, fails to disclose the amount of compensation that KBW's affiliate received or expects to receive for providing the aforementioned services.

38. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

39. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

40. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

41. The Proxy Statement provides that, during the sales process, JMP entered into non-disclosure agreements with potential buyers.

42. The Proxy Statement, however, fails to disclose the terms of JMP's non-disclosure agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

43. Without this information, JMP shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable JMP shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

47. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

10

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

48. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

53. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 25, 2021                              Respectfully submitted,

                                                                          **HALPER SADEH LLP**

                                                                          By: /s/ Daniel Sadeh
                                                                          Daniel Sadeh, Esq.
                                                                          Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                                          667 Madison Avenue, 5th Floor
                                                                          New York, NY 10065

              Telephone: (212) 763-0060
              Facsimile: (646) 776-2600
              Email: sadeh@halpersadeh.com
                 zhalper@halpersadeh.com

*Counsel for Plaintiff*